UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ARTHUR CAMP, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:17-CV-03472 |
| | § | |
| ISO-TEX DIAGNOSTICS, INC. AND TEL-TEST, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

### I. INTRODUCTION

The *pro se* plaintiff, Arthur Camp (the "plaintiff"), commenced the instant action against the defendants, Iso Tex Diagnostics, Inc. ("ITD") and Tel-Test, Inc. (Tel-Test") (collectively, "the defendants"), pursuant to the Fair Labor Standards Act, 29 U.S.C. § § 201 *et seq.* ("FLSA"), seeking damages for ITD's alleged failure to pay him overtime wages for hours he worked in excess of forty hours per week. After receiving documentary and testimonial evidence and the arguments of counsel, the Court enter this Memorandum and Order.

### II. THE PARTIES' CONTENTIONS

In his Complaint, filed in this Court on November 13, 2017, the plaintiff alleges that, while working for ITD, he was a non-exempt employee covered under the FLSA. (Dkt. No. 1). He alleges that ITD violated the FLSA by failing to pay him overtime compensation for hours worked in excess of 40 hours per week. The plaintiff maintains that ITD did not have a good faith basis for its unlawful payment practices. He asserts that his duties included directing quality control and quality assurance and performing environmental monitoring of ITD's products. He

disputes, however, that his primary job duties consisted solely of office [non-manual] work directly related to the management or general business operations of ITD or its customers.

On January 11, 2018, the defendants filed their original answer, affirmative defenses and counterclaim denying the plaintiff's allegations and asserting several affirmative defenses, including that (a) the plaintiff was exempt from the FLSA's overtime requirements under the learned professional, executive and/or administrative exemptions and alleging counterclaims for conversion, breach of fiduciary duty, misappropriation of trade secrets, tortious interference with contracts and fraud related to the plaintiff's business dealings with Tel-Test, Inc., and (b) the plaintiff has failed to establish that the defendants violated the FLSA and/or that any violation was committed willfully.

## III. STANDARDS OF REVIEW

### A. Standard of Review Under Fed. R. Civ. P. 52(c)

Rule 52(c) of the Federal Rules of Civil Procedure provides that "[i]f a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 52(c). To this end, a court entering judgment pursuant to Rule 52(c) "must find the facts specially and state its conclusions of law separately" as denoted in Rule 52(a). *Id.*; Fed. R. Civ. P. 52(a)(1).

Nevertheless, "Rule 52(a) does not require that the district court set out [its] findings on all factual questions that arise in a case." *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1054 (5th Cir. 1997) (citing *Golf City, Inc. v. Wilson Sporting Goods Co., Inc.*, 555 F.2d 426, 433 (5th Cir. 1977)). Nor does it demand "punctilious detail [or] slavish tracing of the claims issue by

issue and witness by witness." *Century Marine Inc. v. U.S.*, 153 F.3d 225, 231 (5th Cir. 1998) (citing *Burma Navigation Corp. v. Reliant Seahorse M/V*, 99 F.3d 652, 656 (5th Cir. 1996) (quoting *Schlesinger v. Herzog*, 2 F.3d 135, 139 (5th Cir. 1993)) (other citations omitted). Rather, a court's "[f]indings [are sufficient to] satisfy Rule 52 if they afford the reviewing court a clear understanding of the factual basis for the trial court's decision." *Interfirst Bank of Abilene, N.A. v. Lull Mfg.*, 778 F.2d 228, 234 (5th Cir. 1985) (citing *Lujan v. New Mexico Health & Soc. Servs. Dep't,* 624 F.2d 968, 970 (10th Cir. 1980), citing *Kelley v. Everglades Drainage Dist.*, 319 U.S. 415, 422, 63 S. Ct. 1141, 1145, 87 L. Ed. 1485 (1943); *Stanley v. Henderson*, 597 F.2d 651 (8th Cir. 1979)). "It is not necessary for the [d]istrict [c]ourt to go into minute details to state facts which are already admitted in the record. *Interfirst Bank of Abilene*, 778 F.2d at 234 (citing *Jackson v. Marine Expl. Co.*, 614 F.2d 65 (5th Cir. 1980)).

Moreover, "[u]nlike the standard applicable in judgments as a matter of law, when dismissing a case pursuant to Rule 52(c), a court is not required to make any special inferences or review the facts in the light most favorable to the plaintiff." *Weber v. Gainey's Concrete Prods., Inc.*, No. 97-31267, 1998 WL 699047, at *1 n.1 (5th Cir. Sept. 21, 1998) (citing *Sanders v. Gen. Servs. Admin.*, 707 F.2d 969, 971 (7th Cir. 1983)); *see also Ritchie v. U.S.*, 451 F.3d 1019, 1023 n.7 (9th Cir. 2006) (citing *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554 - 55, 110 S. Ct. 1331, 108 L. Ed.2d 504 (1990) ("The Supreme Court has held with respect to Rule 52(c)'s predecessor that the district court need not give the nonmoving party any favorable inferences.")). "A judgment on partial findings may be entered by the court 'at any time it can appropriately make a dispositive finding of fact on the evidence.'" *Weber*, 1998 WL 699047, *1 n.1 (citing Fed. R. Civ. P. 52 advisory committee's note).

## B. Standard of Review Under FLSA

The FLSA provides that "no employer shall employ any of [its] employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). There are, however, a number of exemptions applicable to this requirement. *See Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349, 352 (5th Cir. 2015) (per curiam) ("Certain employees, however, are exempt from the [FLSA's] overtime requirements.").

Pursuant to 29 U.S.C. § 213(a), overtime pay need not be provided to "any employee employed in a bona fide executive, administrative, or professional capacity . . . or in the capacity of [an] outside salesman."). 29 U.S.C. § 213(a)(1). The burden of proving that an employee is exempt from coverage premised on one of the aforementioned exemptions rests with the employer, with "a fair reading" to be afforded to such exemptions. *Carley v. Crest Pumping Techs., L.L.C.*, 890 F.3d 575, 579 - 80 (5th Cir. 2018) (citing *Encino Motorcars, LLC v. Navarro*, ⸺ U.S. ⸺, 138 S. Ct. 1134, 1142, 200 L. Ed.2d 43 (2018). While the decision of whether an employee qualifies for an exemption from the overtime compensation requirements mandated by the FLSA is a question of fact, the ultimate determination of "whether the employee is exempt from the FLSA's overtime compensation provisions is a question of law." *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000); *see also Zannikos*, 605 F. App'x at 352 ("Whether an employee falls within an exemption is a question of law; the amount of time the employee devotes to particular duties, as well as the significance of those duties, are questions of fact.").

The Department of Labor ("DOL") regulations define "a bona fide administrative" employee as an employee:

> (1)[Who is] [c]ompensated on a salary or fee basis . . . at a rate of not less than $684 per week . . . , exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a). A "bona fide executive" employee is defined to include an employee:

> (1)[Who is] [c]ompensated on a salary or fee basis . . . at a rate of not less than $684 per week . . . , exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).

Finally, to qualify for the "learned professional" exemption, "an employee's primary duty must be the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. § 541.301(a). The following three elements are required to satisfy the primary duty test: "(1) The employee must perform work requiring advanced knowledge; (2) The advanced knowledge must

be in a field of science or learning; and (3) The advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction."

IV. **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

After the conclusion of the bench trial in this matter and after having carefully reviewed the parties' submissions, the record, the evidence admitted at trial and the applicable law, the Court, pursuant to Fed. R. Civ. P. 52(c) and as permitted by Rule 52(a), sets forth its findings of fact and conclusions of law in this Memorandum and Order. Its Findings of Fact are set forth as follows:

(a). ITD is a radiopharmaceutical company that develops and manufactures sterile drugs and other pharmaceuticals for diagnostic and therapeutic applications;

(b). the plaintiff was employed as a Lab Director for ITD for more than 20 years, until his resignation on October 11, 2017;

(c). he admits in his testimony that during his tenure with ITD, he received an annual salary in excess of $100,000 and served as management for several different projects;

(d). the plaintiff was paid on an hourly bases at the rate of $41.27 per hour.

(e). when the plaintiff worked less than 40 hours in any 40 week cycle, his pay was adjusted in accordance with the hours of work credited by a time clock for that week;

(f). when the plaintiff's work week exceeded 40 hours, the defendants would pay 40 hours from the account of Iso Tex-Diagnostics and the overage from Tel Test, Inc.,; the over 40 hours was called "special." *See* [Ex. No. 9].;

(g). payroll time sheets reflected that the plaintiff's timesheets were adjusted one hour for lunch each day whether lunch was taken or not;

(h). the defendants' exhibits show that the "special" time was in fact, hours over 40 hours each week [*See* [Def. Ex. 14, 15 and 16]];

(i). the plaintiff and Hernandez engaged in negotiations for the purchase of Tel-Tex, Inc., and commenced a name change before the owners turned down their offer to purchase in March/April 2017.

(j). the plaintiff and Jesse Hernandez opened a business based on the representation that defendant owners desire to sell the Iso-Tex and Tel-Test, Inc., units and or discontinue the business that Tel-Test was engaged in. Their business was named Tel-Test B;

(k). Tel-Test B was the entity by which the plaintiff and Hernandez's plan to own and continue the operation of Tel-Test, Inc.;

(l). in addition to the plaintiff and Hernandez, several other Iso-Tex employees assisted them with Tel-Test B sales;

(m). neither the plaintiff, Hernandez nor any other Iso-Tex employee who assisted them informed the owner(s) that Tel-Test, Inc., was shuttering, but that the plaintiff and Hernandez were working to keep the business and customers for Tel-Test B;

(n). the initial products used by the plaintiff and Hernandez were products in Tel-Test, Inc.'s, inventory, although other purchases were made by Tel-Test B;

(o). the packaging and shipping were done by Hernandez and others at the Iso-Tex facility;

(p). Hernandez also caused a check to issue under the signature of the owner, Malony, for $17,500 in products taken by Tel-Tex B from Tel-Tex., Inc.'s inventory;

(q). of the profits generated by Tel-Test B, the plaintiff received $38,000 and Hernandez received $58,000;

(r). the evidence fails to show that any employee involved was paid overtime as a result of the time needed to package and mail the Tel-Tex B products to customers. A review of overtime records prior to the contested period would be necessary to determine whether the hours worked during the contested period exceed those prior to the contested period. No records were provided;

(t). Iso-Tex and Tel-Test, Inc., are owed $96,000 from the plaintiff, Hernandez and Tel-Test B which sum represents the funds disbursed to themselves after expenses. Although, the plaintiff and Hernandez used approximately $53,299 of Tel-Test, Inc.'s, inventory, the profits amounted to the sums reflected. The profits generated consumed those products making profits possible;

(u). the defendants intentionally engaged in a scheme to secret the overtime issue from scrutiny. In this regard, the defendants' conduct was to hide the fact that overtime pay was due; and,

(v). evidence shows that the plaintiff had overtime hours over a three-year period: (2015) – 530.00 (2016), 358.46 and (2017) 66, all totaling 948.46 hours overtime for the sum of $20,515.19 [*See* Ex. 2, response to motion for summary judgment].

## V. CONCLUSIONS

### A. As to the Plaintiff's Claim

The Court is of the opinion that the plaintiff qualifies as a "bona fide" administrative employee based on his earnings, duties and discretions exercised within the job title that he held – Lab Director. However, the evidence shows that the plaintiff worked overtime and was treated as an hourly employee and not an exempt employee. Hence, the plaintiff is entitled to time-and-a-half for the hours that he worked over 40 hours. 28 U.S.C. § 201 *et. Seq.*; 29 C.F.R. § 541.200(a). *See also Howard Wilson Chrysler-Plymouth, Inc.,* 203 F.3d at 331. All of plaintiff's remaining claims, if any, are DISMISSED as abandoned or unmeritorious.

### B. As to the Defendants' Counterclaim[1]

In its counterclaim against the counter-defendant, the counter-plaintiffs seeks recovery for: (a) the supplies used by the plaintiff in operating Tel-Test B, (b) the hours that the Iso-Tex employees used to assist the plaintiff and Hernandez in their "secret" endeavor, (c) shipping cost, and (d) miscellaneous expenses totaling $223,892.56. The Court holds that the testimony proffered fails to show that the supplies were beyond the usual necessary to generate the $96,000 in profits. In this regard, the testimony and evidence are lacking.

The evidence also shows that the counter-plaintiffs failed to sue all necessary parties to the scheme alleged. The counter-plaintiffs knew that the Tel-Tex B operation was a partnership owned by the counter-defendant and Jesse Hernandez. They also knew of the assistance by other

---

[1] For clarity, in this section the Court will refer to the defendants as counter-plaintiffs and the plaintiff as counter-defendant.

employees, including Mr. Hernandez's wife. The counter-defendant, Camp, offered testimony and an Assumed Name Certificate that showed Tel-Text B to be a "limited liability corporation". Even though fully apprised of the names of all persons and/or entities involved, the counter-plaintiffs chose to sue only the counter-defendant. The Court is of the opinion that Tel-Test B and Hernandez were necessary parties for complete relief.

Federal Rules of Civil Procedure, Rule 19 dictates that where a party is necessary and subject process or joinder must be joined as a party to avoid a "substantial risk of the existing party incurring double, multiple, or otherwise inconsistent obligations because of their interests. *See* [FRCP 19(a)(1)(B)(ii)]. Hernandez and Tel-Text B were necessary parties, subject to process, and there was not reason that counter-plaintiffs should not have joined them in their counterclaim for damages.

Here, the Court cannot render an adequate judgment that addresses all of the counter-plaintiffs' claims. At best, the Court may, in equity, award damages in proportion to each partner's interest. The evidence shows that the partners each owed a 50% interest in the partnership. Likewise, expenses would be shared on that basis. However, the evidence also shows that Hernandez received 60% of the profit and the plaintiff 40%.

The testimony of the counter-plaintiffs' expert on expenses was unpersuasive and fraught with error. For example, the product used to start the business came from Tel-Test Inc.'s, inventory. That product became part of the "costs of goods" sold. It became part of the $153,681.85 in gross sales. Therefore, $53,299 in inventory would have been subtracted by Tel-Test Inc., at the end of the day, leaving a gross profit of approximately $100,382.85. Hence, the Court is of the opinion that the best evidence of the profit is reflected in the books of Tel-Test B, *i.e.,* $96,000.

Other expenses identified by the counter-plaintiffs are based on orders shipped, not charges identified as paid by Tel-Test, Inc., or Iso-Tex. Likewise, the claim for supplies, shipping component cost, boxes and time expended by employees is speculative at best, and would have been part of the expenses had Tel Test, Inc., sold the products. There is no evidence that Iso-Tex or Tel-Test, Inc., produced and incurred any employee labor expense beyond the 40 hours each week that they generally paid each employee. Therefore, the Court denies these claims for lack of credible evidence.

The Court concludes that the counter-plaintiffs shall recover $38,000 from the counter-defendant, for his share of the profits from Tel-Test B's engagements minus $19,500 in overtime wages owed to him. The Court also concludes that the counter-defendant and counter-plaintiffs' claims are so intertwined that neither party should collect an attorney's fee or Costs of Court. Therefore, attorneys' fees and Costs of Court are Denied. A judgment shall be entered in behalf of the counter-plaintiffs for the amount of $18,500.

It is so Ordered.

SIGNED on this 3rd day of April, 2020.

_____
Kenneth M. Hoyt
United States District Judge